IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| RUYAKCHERIAN LLP,<br><br>    Plaintiff,<br><br>    v.<br><br>PROMOS TECHNOLOGIES, INC,<br><br>    Defendant. | Civil Action No.: _____<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff RuyakCherian LLP, ("RuyakCherian"), by and through counsel, files this Complaint against Defendant ProMOS Technologies, Inc., ("ProMOS") and alleges as follows:

**Nature of the Action**

1. This action arises from RuyakCherian's representation of ProMOS's wholly owned subsidiary in a federal court action styled *GSI Technology Inc. v. United Memories, Inc.*, *et al*, 5:13-cv-01081-PSG (N.D. Cal.) (the "underlying litigation").

2. This representation was undertaken and continued by RuyakCherian in reliance on ProMOS's specific representations that if RuyakCherian continued to represent the subsidiary, ProMOS would ensure that RuyakCherian's legal fees, costs, and expenses were paid. ProMOS claimed that it could not pay at the time because it was in reorganization under the laws of Taiwan, but that it would pay as soon as it emerged from reorganization.

3. At no point during the representation or subsequent to final resolution of the underlying litigation has ProMOS ever disputed or denied that all of RuyakCherian's fees, costs and expenses were actually, fairly, and appropriately incurred and/or earned.

4. However, at the conclusion of the underlying litigation and after ProMOS emerged

1

from a reorganization process governed by the laws of Taiwan, ProMOS has refused to pay RuyakCherian's fees, costs, and expenses as promised.

## Parties

5. Plaintiff RuyakCherian is a limited liability partnership organized and existing under the laws of the District of Columbia, with its principal places of business located at 1936 University Avenue, Suite 350, Berkeley, California 94704 and 1700 K Street, NW, Suite 810, Washington, District of Columbia 20006.

6. Upon information and belief, defendant ProMOS is a publicly-traded company organized under the laws of Taiwan and traded on the Taiwan over-the-counter stock exchange. Its principal place of business is located at 30078 A3, 3/F, 1st Practice Road, Hsinchu Science Industrial Park, Taiwan. ProMOS promotes itself as a leading manufacturer of semiconductor memory products. It was established in 1996 and exports its products to countries throughout the world.

7. At all times relevant to the issues in this Complaint, United Memories, Inc. ("UMI") was a corporation organized under the laws of Colorado, with its principal place of business located at 4815 List Drive, Colorado Springs, Colorado 80919 and was a wholly owned subsidiary of ProMOS ProMOS. On information and belief, UMI is in the process of being wound down.

## Jurisdiction and Venue

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because RuyakCherian and ProMOS are citizens and/or subjects of different states and/or a foreign state and the matter in controversy, exclusive of interest and costs, exceeds $75,000.

9. This Court has personal jurisdiction over the ProMOS under D.C. Code § 13-423 because ProMOS engaged in fraudulent conduct, fraudulent and negligent misrepresentations,

2

within and directed at the District of Columbia. In addition, RuyakCherian has suffered tortious injury in the District of Columbia, including the loss of the fees to which it is legally entitled to receive as a result of the acts and omissions engaged in by ProMOS.

10. Venue is proper in this District under 28 U.S.C. § 1391(b)(2), (b)(3) and (c)(3). This District is where a substantial part of the events or omissions giving rise to RuyakCherian's claims occurred, ProMOS is subject to personal jurisdiction in this District, and ProMOS is not a resident of the United States.

## Statement of Facts

11. ProMOS manufacturers and sells memory products. Specifically, ProMOS provides design, assembly engineering, testing, and field application engineering services for memory products. UMI, a wholly owned subsidiary of ProMOS, provided integrated circuit design and layout services for a broad range of customers in the United States and abroad, including of ProMOS's DRAM products during the relevant time.

12. At all relevant times, Dr. Min-Liang Chen was Chairman and President of ProMOS.

13. At all relevant times, Mr. Min-Hsing Yang was in-house counsel of ProMOS.

14. At all relevant times, Jon Faue was Chief Executive Officer and President of UMI.

15. On or about March 8, 2013, UMI was sued by one of its customers, GSI Technology, Inc ("GSI"), for breach of contract and unfair competition under California Business and Professional Code § 17200 for alleged violations of confidentiality obligations under an agreement between the parties.

16. Mr. Sunny Cherian, a partner of RuyakCherian, who formerly was a partner at Hogan Lovells, was retained by UMI shortly thereafter while Mr. Cherian was a partner at Hogan Lovells.

17. After one prior amendment, on or about October 3, 2013, GSI filed a Second Amended Complaint. This complaint added Integrated Silicon as a defendant, and as to UMI, asserted the following claims (i) Violation of Section 1 of the Sherman Act; (ii) Violations of the RICO statute under both 18 U.S.C. § 1961(c) and § 1961(d); (iii) Declaratory Relief under 28 U.S.C. § 2201, *et seq.*; (iv) Breach of Contract; (v) Unfair Competition under California Business and Professional Code § 17200, *et seq.* and/or Colorado Revised Statute § 6-1-101, *et seq.*; (vi) Fraud; (vii) False Promise; (viii) Misappropriate of Trade Secrets under the Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101 and/or Cal. Civ. Code § 3426, *et seq.*; and (ix) Intentional Interference with Prospective Business Advantage. The Second Amended Complaint sought both a preliminary and permanent injunction, as well as compensatory damages, treble damages, restitution, disgorgement, punitive and exemplary damages, attorneys' fees, costs, and pre- and post-judgment interest.

18. In connection with this Second Amended Complaint, GSI sought over $40 million in damages.

19. From inception of the case in 2013, through trial and until the end of the case, including the Ninth Circuit appeal, which was decided in February 2018, Mr. Cherian represented UMI in this litigation. During that time, Mr. Cherian moved to Winston & Strawn and subsequently started his own firm named RuyakCherian LLP with Robert Ruyak but continued his representation of UMI.

20. Throughout this time, ProMOS monitored the status of the litigation, including the appeal, through Mr. Yang. In addition, Mr. Cherian provided periodic status updates on the case to ProMOS.

21. However, on several occasions, Mr. Faue of UMI told Mr. Cherian that he did not

have the cash required to continue to pay the legal bills on an ongoing basis, but that its owner, ProMOS owed UMI a significant amount of money and once that was paid, UMI would, in turn, pay Hogan Lovells and subsequently RuyakCherian.

22.     ProMOS was not able to pay any money immediately because it was in reorganization in Taiwan under Taiwanese laws, which included the government taking control of all payments made by the company.

23.     On at least two occasions, Mr. Cherian travelled to Taiwan and met with ProMOS and discussed the case. Specifically, on or about October 13, 2014, Mr. Cherian travelled to Taiwan and met with Dr. Chen and Ming-Hsing Yang (known as "Sam"), in-house counsel for ProMOS. Mr. Ruyak was also present at this meeting. There were multiple purposes for this meeting. First, ProMOS was very concerned about the risk of exposure to them from the lawsuit against UMI. Second, ProMOS Chairman and President Dr. Chen requested that Mr. Cherian continue to represent UMI in the lawsuit through trial in order to avoid or mitigate ProMOS's exposure. Finally, ProMOS told Mr. Cherian that they would pay all of Mr. Cherian's legal fees in connection with their continued representation of UMI through the trial as soon as ProMOS emerged from government-supervised reorganization.

24.     In reliance on these promises made by Dr. Chen and Mr. Yang, Mr. Cherian agreed to continue representing UMI throughout the trial.

25.     Prior to trial, the Court in the underlying matter dismissed the three federal claims against UMI which alleged Sherman Act and RICO violations.

26.     Trial in the underlying matter took place in October and November 2015 and culminated in a jury verdict on November 25, 2015.

27.     The jury returned a verdict in favor of UMI on the fraud, false promise, and

intentional interference with prospective business advantage claims. The Unfair Competition claims had to be determined by the Court and were ultimately rejected. While the jury found that UMI had misappropriated a small number of secrets and breached its contract, the damage to GSI was very small and the jury awarded GSI $0 in general damages for the misappropriation and $953,400 in contract damages. However, on May 26, 2016, the Court granted UMI's Motion for Judgment as a Matter of Law and found that GSI was not entitled to the contract damages the jury had awarded, resulting in GSI receiving nothing from UMI as a result of the lawsuit.

28. UMI paid RuyakCherian $250,000 in expenses in connection with the trial. However, an additional $857,659.29 in fees, costs and other expenses were incurred by Mr. Cherian, Mr. Ruyak and the trial team and remain outstanding.

29. Despite the essentially complete win at the trial level, UMI was not determined by the Court to be the prevailing party, which is required for UMI to have its attorneys' fees paid by GSI. Therefore, UMI wanted to appeal this decision.

30. UMI agreed to pay for RuyakCherian to represent UMI on the appeal of the prevailing party issue, which ultimately was lost at the Ninth Circuit. However, RuyakCherian is still owed an additional $362,632.83 for its work in connection with these appeals.

31. At no point has ProMOS denied or disputed that these fees, costs and expenses are due and owing to RuyakCherian for its work in representing UMI.

**First Cause of Action - Fraud**

32. RuyakCherian repeats and reasserts each and every prior allegation, as if fully set forth herein.

33. ProMOS, by and through Dr. Chen and Mr. Yang, told Mr. Cherian that ProMOS would ensure that all legal bills associated with Mr. Cherian's representation of ProMos' wholly

owned subsidiary UMI would be paid. These statements, false or materially misleading when made, were intended to convince Mr. Cherian to continue representing UMI in the underlying litigation.

34. As detailed above, in reliance on the representations made by ProMOS, Mr. Cherian continued and successfully completed their representation of UMI in the underlying litigation.

35. Mr. Cherian understood that ProMOS had a direct financial and business interest in ensuring that UMI had the best possible representation and avoided liability for the claims raised in the underlying litigation.

36. In furtherance of their continued representation of UMI, RuyakCherian incurred fees, costs, and expenses of $1,220,292.12 that have not been paid.

37. Despite never challenging or disputing that these fees, costs, and expenses were fairly and appropriately earned and/or incurred by RuyakCherian, or that RuyakCherian is owed this amount, ProMOS now refuses to pay.

## Second Cause of Action - Fraudulent Misrepresentation

38. RuyakCherian repeats and reasserts each and every prior allegation, as if fully set forth herein.

39. ProMOS, by and through Dr. Chen and Mr. Yang, fraudulent misrepresented to Mr. Cherian that it would pay for all fees, costs, and expenses incurred in connection with his representation of UMI in the underlying litigation.

40. These misrepresentations were made for the sole purpose of convincing RuyakCherian to continue to represent UMI in the underlying litigation.

41. RuyakCherian did, in fact, continue to represent UMI in the underlying litigation to its completion, including all appeals. This continued representation resulted in RuyakCherian

being harmed by incurring $1,220,292.12 in fees, costs, and expenses that have not been paid and that ProMOS now refuses to pay.

### Third Cause of Action – Negligent Misrepresentation

42. RuyakCherian repeats and reasserts each and every prior allegation, as if fully set forth herein.

43. ProMOS, by and through Dr. Chen and Mr. Yang, negligently misrepresented to Mr. Cherian that it would pay him for all fees, costs, and expenses incurred in connection with its representation of UMI in the underlying litigation.

44. These misrepresentations were made for the sole purpose of convincing Mr. Cherian and ultimately RuyakCherian to continue to represent its wholly owned subsidiary UMI in the underlying litigation.

45. Mr. Cherian did, in fact, continue to represent UMI in the underlying litigation to its completion, including all appeals. This continued representation resulted in RuyakCherian being harmed by incurring $1,220,292.12 in fees, costs, and expenses that have not been paid and that ProMOS now refuses to pay.

### Fourth Cause of Action – Promissory Estoppel

46. RuyakCherian repeats and reasserts each and every prior allegation, as if fully set forth herein.

47. As detailed above, ProMOS, by and through Dr. Chen and Mr. Yang, promised to pay Mr. Cherian for all fees, costs, and expenses incurred in connection with its representation of its wholly owned subsidiary, UMI, in the underlying litigation. This promise was made with the clear and stated intent of convincing Mr. Cherian and ultimately RuyakCherian to continue with its representation of UMI.

48. In direct reliance on these promises, RuyakCherian did in fact continue its representation of UMI to the completion of the underlying litigation, including all appeals.

49. As a result of this continued representation, RuyakCherian has incurred fees, costs, and expenses of $1,220,292.12 that have not been paid and that ProMOS now refuses to pay.

WHEREFORE, RuyakCherian respectfully requests judgement against ProMOS as follows:

(a) Awarding it compensatory damages on the first, second, third and fourth causes of action, in an amount to be proved at trial, but in no event less than $1,220,292.12;

(b) Awarding it punitive damages on the first, second, and third causes of action, in an amount to be proved at trial;

(c) Awarding it prejudgment interest, as well as its costs and disbursements incurred in connection with this action, including reasonable attorneys' fees; and

(d) Awarding it such other and further relief as the Court deems just and proper.

## JURY DEMAND

RuyakCherian demands a trial by jury on all issues so triable.

Date: October 23, 2019

Respectfully submitted,

RuyakCherian LLP

By: _____
Martin Cunniff (DC Bar No. 424219)
martinc@ruyakcherian.com
RuyakCherian LLP
1700 K St. NW, Suite 810
Washington, DC 20006
Tel: (202) 838-1547

*Counsel for Plaintiff RuyakCherian LLP*